**STATE OF IDAHO; Idaho Public Utilities Commission (IPUC), Petitioners,**

**Union Pacific Railroad Company, Intervenor,**

v.

**INTERSTATE COMMERCE COMMISSION, Respondent.**

**STATE OF IDAHO, et al., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION, Respondent.**

Nos. 90–70178, 90–70281.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1991.

Decided July 24, 1991.

As Amended Aug. 22, 1991.

Marsha H. Smith, Deputy Atty. Gen., Idaho Public Utilities Com'n, Boise, Idaho, and Harold E. Spencer, Belnap, Spencer, McFarland, Emrich & Herman, Chicago, Ill., for petitioners.

Charles Alan Stark, Interstate Commerce Com'n, Washington, D.C., for respondent.

Joseph D. Anthofer, Omaha, Neb., for intervenor.

Before BROWNING, CANBY and TROTT, Circuit Judges.

CANBY, Circuit Judge:

The State of Idaho (Idaho) appeals the Interstate Commerce Commission's March 1990 decision authorizing Union Pacific Railroad (UP) to abandon thirty-one miles of track. Idaho claims that the Commission's voting procedures were invalid and that the Commission improperly reopened an earlier final decision. In addition, Idaho appeals from the Commission's April 1990 decision affirming the procedural validity of the March decision and denying Idaho's petition to reopen the March decision.

We conclude that the Commission's voting procedures are valid and affirm the Commission's March 1990 decision. We further conclude that we lack jurisdiction to review the Commission's April 1990 decision.

FACTS

In January of 1989, UP applied to the Commission to abandon thirty-one miles of track in Idaho. On July 13, 1989, an Administrative Law Judge (ALJ) denied UP's application. The ALJ found that UP had deliberately downgraded service on the line to facilitate abandonment, that the forecast year traffic volume was a minimum of 460 carloads, that the forecast year operating profit was $125,384[1], that operation of the branch would not impose a financial burden on UP, that feasible alternative transportation was lacking, and that abandonment

would have a serious adverse impact on rural and community development. UP appealed.

On November 6, 1989, the Commission affirmed the ALJ's decision to deny UP's abandonment petition, but for different reasons. The Commission found that the evidence did not indicate that UP had deliberately downgraded its service. In addition, the Commission noted that the ALJ erred in his forecast year data, but the Commission did not arrive at a new carload forecast because it found that even using UP's minimal forecast, UP would earn an operating profit of $21,118. Further, the Commission found that alternative transportation was viable but agreed with the ALJ that there would be substantial adverse impact on community development.

Voting in favor of affirming the ALJ's decision were Commissioners Simmons and Lamboley, with Commissioner Andre concurring in the result. Commissioners Gradison and Phillips dissented. UP filed a petition to reopen the Commission's November 6th decision.

The Commission granted the petition, reviewed its November 6, 1989, decision and found material error. The Commission reversed its prior decision and authorized the abandonment because "the burdens that abandonment may impose on shippers and the community are outweighed by the burden on UP and interstate commerce resulting from continued operation of a line that at best is earning a marginal operating profit and suffering a significant opportunity cost burden." In reaching this conclusion, the Commission found that the forecast year traffic level was 292 carloads and stated that any other figure would be inconsistent with its finding that UP did not deliberately downgrade. The Commission found several errors in its earlier calculations of forecast year operating profits and accordingly reduced the forecast to $8,914. Similarly, the Commission adjusted its figure for opportunity costs upward to $111,432. The Commission found opportunity

---

**1.** This number was derived by subtracting the forecast year total avoidable costs of $781,409 from the forecast year total revenue of $906,793 (derived from the 460 carload forecast).

costs to be a significant factor in analyzing an abandonment application, especially where, as here, the opportunity costs were substantial and the line was only marginally profitable. The Commission also held that the lack of shipper opposition indicated availability of transportation alternatives.

Commissioners Emmett (Andre's replacement), Gradison, and Phillips voted to authorize the abandonment. Commissioners Simmons and Lamboley voted against authorization. The Commissioners used a notational voting method under which the Commissioners note their votes seriatim on a circulating draft decision. Commissioner Gradison was the first Commissioner to vote, casting her vote on February 8th, the day the draft of the proposed decision was circulated. Commissioner Phillips cast the last, and the deciding vote on February 22nd. By that time, Commissioner Gradison, whose vote was counted, had been replaced by Commissioner Philbin on February 12th.

Idaho filed with the Commission a petition for a stay pending judicial review and a petition for reopening the March order. In addition, Idaho filed with this Court a petition for a stay and for review of the Commission's March 12th order. On April 11, we denied Idaho's petition for a stay of the abandonment authorization. On April 13, the Commission denied both of Idaho's petitions. Idaho then filed with this Court a petition for review of the Commission's April 13th order denying its petitions. In this consolidated case, we address the Commission's March 12th and April 13th orders.

## DISCUSSION

### I.

### March 12, 1990 Decision

#### A. Notational Voting Procedure

■ Idaho does not challenge the Commission's ability to employ notational voting,[2] but rather argues that the Commission erred in counting a departing Commissioner's notational vote. Specifically, Idaho contends that former Chairman Gradison's vote should not have been counted because she had been replaced on the Commission when the last necessary vote was cast—the time when, according to Idaho, the case was "decided." Without Gradison's vote, the other Commissioners were evenly split on whether to reopen the Commission's earlier decision and whether to reverse that decision if revisited. This tie vote would have left the earlier decision intact, and UP would not be authorized to abandon the branch.

■ Idaho relies on the quorum requirement, 49 U.S.C. § 10306(a), to establish that the Commission may not count the vote of departing Commissioners. This reliance is misplaced. Section 10306(a) states that a majority of Commissioners is a quorum for the transaction of business. 49 U.S.C. § 10306(a). But this statute is silent as to what point in time, or over what period of time, the quorum requirement may be satisfied. Moreover, Idaho's argument that 49 U.S.C. § 10322(h), which states that a final decision is effective on the date served on the parties, does not help us in our analysis of the issue before

2. Notational voting is a procedure which allows several members of a multi-member agency or commission to vote individually and separately, as opposed to voting at a meeting of the members of the agency. *Railroad Comm'n of Tex. v. United States*, 765 F.2d 221, 230 (D.C.Cir.1985). The Commission's notational voting procedure has been judicially affirmed. *T.S.C. Motor Freight Lines, Inc. v. United States*, 186 F.Supp. 777, 785–86 (S.D.Tex.1960) (3 judge court) (The requirement of a quorum does not require members to be physically present in view of the Commission's authority to "conduct its proceedings ... in such manner as will best conduce to the proper dispatch of business"), *aff'd per curiam sub nom. Herrin Transp. Co. v. United States*, 366 U.S. 419, 81 S.Ct. 1356, 6 L.Ed.2d 387 (1961); *Railroad Comm'n of Tex. v. United States*, 765 F.2d 221, 230 (D.C.Cir.1985) ("Congress intended to permit agencies to consider and act on agency business by circulating written proposals for sequential approval by individual agency members without formal meetings.") *See also Braniff Airways, Inc. v. C.A.B.*, 379 F.2d 453, 460 (D.C.Cir.1967) (Quorum acting on a matter need not be physically present at any one particular time to ponder the evidence where the CAB is authorized "to conduct its proceedings in such manner as will be conducive to the proper dispatch of business and to the ends of justice.")

us today. Counting the vote of a departing Commissioner does not affect the time in which a decision is final. We find no statutory prohibition against the Commission's procedure of counting the vote of a departing Commissioner.

■ In the absence of Congress' explicit direction, the Commission is empowered to prescribe regulations and procedures to carry out the Interstate Commerce Act. *See* 49 U.S.C. § 10321(a).[3] We need only satisfy ourselves that the Commission set forth a rational basis for its notational vote counting policy.[4] The Commission in its April 13th decision reviewed its policy of counting the votes of departing Commissioners. The decision explains the reasons the Commission has adopted this policy and outlines the limitations on the policy. The decision states: "As long as all Commissioners have voted on the same decision and a consensus is reached, our practice has been to count the vote of the departing Commissioner as a matter of administrative efficiency, practicality and fairness to the decisional process." *United Pac. R.R. Co.—Abandonment in Fremont and Teton Counties, Idaho,* 6 I.C.C.2d 641, 644 (1990).

■ In fact, the Commission has employed the procedure of counting departing Commissioners' votes consistently. *See Antitrust and Competitive Factors in Motor Carrier Finance Cases,* 127 M.C.C. 657 (Decided Jan. 11, 1980) (Former Chairman O'Neal shown as voting on a case bearing a January 11, 1980, decision date even though his term expired on December 31, 1979); *Regulation Governing Minimum Amounts of Cargo Insurance,* 132 M.C.C. 711 (Decided August 5, 1981) (Commissioner Trantum's term expired July 31, 1981); *Lease & Interchange of Vehicles,* 132 M.C.C. 822 (Decided June 22, 1982) (Commissioner Gresham's term expired on June 18, 1982); *Annual Volume Rates on Coal—Wyoming To Flint Creek, Ark.,* 364 I.C.C. 753 (Decided February 2, 1981). This is not a case where an agency has altered its normal procedures to reach a desired result. The Commission has consistently applied the same policy. Moreover, it was within the sound discretion of the Commission to adopt that policy. We decline to substitute our judgment for that of the Commission.

B. Reopening for Material Error

■ Idaho further contends that the Commission abused its discretion in reopening its November decision, which denied UP's petition to abandon the branch. We disagree. It is well settled that the decision whether to reopen is committed to the Commission's discretion and that decision should not be overturned "except in the most extraordinary circumstances," *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 296, 95 S.Ct. 438, 447, 42 L.Ed.2d 447 (1974), upon a "showing of the clearest abuse of discre-

---

**3.** Former section 17(3) (1976 ed) also supports this view. Section 17(3) provided that "the Commission shall conduct its proceedings ... in such manner as will best conduce to the proper dispatch of business to the ends of justice." Congress recodified the Interstate Commerce Act in 1978 and deleted this portion of section 17(3) as surplus. *See* 49 U.S.C. § 10306 (historical note). However, section 3(a) of the Recodification Act provides that no substantive change is to be inferred from the recodification. Pub. L.No. 95–473, 92 Stat. 1337 (Oct. 17, 1978). Accordingly, both the old and new versions of the Interstate Commerce Act may be relied upon in interpreting the statute's present meaning. *Southern Motor Carriers Rate Conference v. United States,* 773 F.2d 1561, 1568 (11th Cir. 1985); *Atchison, T. & S.F. Ry. Co. v. United States,* 617 F.2d 485, 490–91 (7th Cir.1980); *Trailer Marine Transp. Corp. v. F.M.C.,* 602 F.2d 379, 383 n. 18 (D.C.Cir.1979).

**4.** The Supreme Court has cautioned courts reviewing agency procedures "against engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 525, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). For example, even though this court, which employs a notational voting system, does not count the vote of a departing judge, we cannot say that the Commission must use the same procedures we have chosen for our court. In fact, other federal appellate courts have not always adhered to the policy used now in the Ninth Circuit. *See Association of Nat'l. Advertisers, Inc. v. FTC,* 627 F.2d 1151 (D.C.Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980) (Judge Leventhal supplied the swing vote notwithstanding his death a month prior to the decision date).

tion." *United States v. Pierce Auto Freight Lines, Inc.,* 327 U.S. 515, 535, 66 S.Ct. 687, 697, 90 L.Ed. 821 (1946).

■ Section 10327(g)(1) provides that "[t]he Commission may, at any time on its own initiative because of material error, new evidence, or substantially changed circumstances (A) reopen a proceeding ... and (C) change an action of the Commission." 49 U.S.C. § 10327(g)(1). Both Idaho and the Commission agree that the Commission's actions rest on the "material error" clause. Idaho contends, however, that the Commission did not explicitly find and identify a material error in its November decision. Idaho argues that the only reason the Commission reviewed and set aside its November decision was that a new Commissioner disagreed with the vote of his predecessor. But the Commission's March decision did find a number of material errors and discussed each of these in some detail.[5] Therefore, we find no abuse of discretion in reopening the case because of material error in the earlier decision.

## C. Evidence Supported the Decision

■ Having found the procedures employed in this case to be adequate, we now turn to Idaho's attacks on the Commission's decision as arbitrary, capricious, unsupported by substantial evidence, and contrary to the evidence. Our review of the Commission's decision on a petition to abandon is very narrow. *Southern Pac. Transp. Co. v. I.C.C.,* 871 F.2d 838, 841 (9th Cir.1989) *(citing Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 319–20, 101 S.Ct. 1124, 1131–32, 67 L.Ed.2d 258 (1981).

■ Idaho contends that the March 12th decision was arbitrary and capricious in two of its findings. First, Idaho argues that the carload projection of 292 was not based on substantial evidence. Although the Commission's determination of carload projection may not be the only one obtainable from the evidence, its determination should stand if supported by substantial evidence. *Consolo v. F.M.C.,* 383 U.S. 607,

620–21, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966). The Commission fully explained its reasoning in arriving at the 292 figure and explained how any other figure would be inconsistent with its finding of no deliberate downgrading. Substantial evidence supports the Commission's reasoning. This court will not undertake the task of determining the traffic level which will move over a line in the forecast year; this type of determination is best left to the Commission, which has expertise and broad authority in the abandonment area. *See e.g., Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 319–23, 101 S.Ct. 1124, 1131–33, 67 L.Ed.2d 258 (1981).

■ Idaho's second claim of arbitrary and capricious actions by the Commission focuses on the weight the Commission chose to give to the testimony of the farmers potentially affected by the abandonment. The Commission did not totally ignore the impact on the farmers, as Idaho suggests, but found that the impact was outweighed by the burden on UP of keeping the branch open. Thus, the Commission complied with 49 U.S.C. § 10903(a), which directs it to consider whether abandonment will have a serious adverse impact on rural and community development. Idaho argues that the Commission must afford the farmers' testimony the same weight it afforded that of the grain elevator operator. But the weight to be accorded various items of evidence as well as the inferences to be drawn therefrom are not for us to reweigh. *Illinois Cent. R.R. Co. v. Norfolk & W. Ry. Co.,* 385 U.S. 57, 69, 87 S.Ct. 255, 262, 17 L.Ed.2d 162 (1966).

■ The Commission's findings concerning the adverse effect on the community are supported by substantial evidence. We affirm the Commission's abandonment decision.

## II.

### April 13, 1990 Decision

■ The Commission asserts that this court lacks jurisdiction to review its March

---

5. For example, the Commission found as material error the earlier figure for minimum number of carloads used in calculating expected profit. The error was apparent in light of the fact that the Commission at the same time had determined that there was no deliberate downgrading.

12th decision because it was not the Commission's final decision. The Commission takes the position that the April 13th decision denying the petition to reopen was the Commission's final decision and is the only decision reviewable by this Court. The Commission relies on *I.C.C. v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987), to support this contention.

The rule announced in *BLE*, however, leads to exactly the opposite result in the circumstances of this case: we have jurisdiction to review the March 12th decision but not the April 13th decision. *See also Friends of Sierra R.R., Inc. v. I.C.C.*, 881 F.2d 663, 666 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990). The court of appeals in *BLE* was asked to review the Commission's denial of a petition to reopen where that petition alleged material error. The Supreme Court concluded that "where a party petitions an agency for reconsideration on the ground of 'material error,' *i.e.,* on the same record that was before the agency when it rendered its original decision, 'an order which merely denies rehearing of ... [the prior] order is not itself reviewable.'" *Id.* 482 U.S. at 280, 107 S.Ct. at 2366 (citations omitted).[6] The Court explained that the appeal from the denial places before the reviewing court the same substance that would be before it on an appeal from the original proceeding. *Id.* Moreover, the Court noted that it is irrelevant that the order refusing reconsideration discussed the merits, *id.,* as did the April 13th order in this case. Accordingly, we dismiss the petition for review of the April 13th decision.

NO. 90–70178 AFFIRMED.

NO. 90–70281 DISMISSED.

---

**6.** The Court noted that the reviewing court has jurisdiction to review a denial to reopen for new evidence or changed circumstances. *BLE*, 482 U.S. at 279, 107 S.Ct. at 2366.